UNITED STATES of America ex rel.
Nelson AYALA, Petitioner,

v.

James TUBMAN, Warden, Rikers Island
Hospital, Respondent.

No. 73 C 1191.

United States District Court,
E. D. New York.

Nov. 26, 1973.

## MEMORANDUM ORDER

NEAHER, District Judge.

Petitioner, at the time of filing this application for a writ of habeas corpus, was incarcerated in the Rikers Island Hospital, apparently following a plea of guilty to an indictment that had been pending in the Bronx County Supreme Court. Petitioner alleges a denial of his constitutional right to a speedy trial, inducement to the entering of a perjured plea, and either a coerced withdrawal or outright denial of his right to appear before the grand jury. Petitioner also alleged that he had effectively exhausted all available State remedies.

On October 2, 1973, this court issued an order to show cause to the State Attorney General. The order was ultimately responded to by letter of November 15, 1973 from the Office of the District Attorney of Bronx County, which confirmed that petitioner is confined at Rikers Island pursuant to a guilty plea in the Bronx County Supreme Court.

The District Attorney's letter and independent inquiry brought to the court's attention that Rikers Island, despite its mailing address in Queens County, is nonetheless within the territorial boundaries of Bronx County. The territorial jurisdiction of this court does not include Bronx County, but does include Queens County and "concurrently with the Southern District, the waters within the counties of Bronx and New York." 28 U.S.C. § 112(c) (1970). The question of whether Rikers Island can be considered to be part of the "waters within Bronx County" is for this case more than a curious abstraction. Unless

petitioner's place of incarceration can be considered within the statutorily defined boundaries of this district, his petition fails to meet the requirements of 28 U. S.C. § 2241(d) (1970), as both petitioner's place of custody and the sentencing court are within the Southern District of New York.

A common-sense approach to the problem suggests that what Congress had in mind in its limited establishment of concurrent jurisdiction in adjoining waters was the avoidance of difficult venue questions in maritime-connected cases arising in such waters. At any rate, it can hardly be thought Congress intended that two district courts shall have jurisdiction over the same area of land, particularly when State legislators and cartographers have no difficulty in precisely locating that land within one of the districts. The fact that the land in question is an island within the waters of concurrent jurisdictions does not alter the situation, for the same could be said for the islands of Manhattan and Long Island. Accordingly, the court concludes that, at least insofar as 28 U. S.C. § 2241(d) is concerned, inmates of the New York City Department of Correction's facilities on Rikers Island who have been convicted and sentenced in a State court held outside of this district may not file an application for a writ of habeas corpus in this court.

There remains the vexing question of the proper disposition of the instant application. District courts in this circuit have been divided on the question of whether, in a case such as this, the application may be transferred under 28 U.S.C. § 1406(a) for improper venue, or whether the defect under 28 U.S.C. § 2241(d) is jurisdictional, requiring a dismissal. In United States ex rel. Ruffin v. Mancusi, 300 F.Supp. 686 (E.D. N.Y.1969), Judge Judd of this court adopted the venue approach and ordered a transfer of the petition. Among the reported cases, both before and after *Ruffin,* district courts of this circuit have found the defect one of subject

matter jurisdiction which required outright dismissal of the petition. United States ex rel. Ervin v. Sawner, 322 F. Supp. 1108 (S.D.N.Y.1971), United States ex rel. Jimenez v. Conboy, 310 F. Supp. 801 (S.D.N.Y.1970); United States ex rel. Griffin v. LaVallee, 270 F.Supp. 531 (E.D.N.Y.1967) (Weinstein, J.). The practical difference in these approaches is whether or not the petitioner would be obliged to refile his petition in the proper court at a subsequent time.

A review of these cases leaves this court convinced that although § 2241(d), in referring to judicial districts, is phrased in terms traditionally associated with venue requirements, the overall statutory language and its legislative history make clear that it is a grant of subject matter jurisdiction to appropriate courts to entertain applications for writs of habeas corpus. That conclusion is strengthened by Judge Weinfeld's instructive analysis of this problem in *Jimenez, supra,* which adds that prior to the enactment of § 2241(d), Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), had to be read as establishing subject matter jurisdiction limitations on 28 U.S.C. § 2241(a). 310 F.Supp. at 802–803. Since § 2241(d) was enacted in response to the *Ahrens*-created "jurisdictional void" in the sentencing district when the petitioner was no longer confined there, § 2241(d) must also be read as jurisdictional. *Id.*

This analysis, once very persuasive, may be questionable in light of the holding in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S. Ct. 1123, 35 L.Ed.2d 443 (1973). *Braden,* if it did not overrule the *Ahrens* rule entirely, substantially undercut its jurisdictional basis, strongly suggesting that it was not to be read as Judge Weinfeld has taught. 410 U.S. at 494–500, 93 S. Ct. 1123. Nevertheless, the *Braden* case does not construe § 2241(d), and hence does not control here. The court therefore adheres to its view of the statute, and concludes, on its own motion, that

there is no subject matter jurisdiction in the instant case.

■ Ordinarily such a conclusion would end the matter, the result being an outright dismissal as in *Jimenez, supra.* However, the court declines to follow this route, for it is convinced that even a defect of subject matter jurisdiction in the special circumstances of this case does not defeat the court's power to transfer under § 1406(a).

The starting point for what may at first blush seem a remarkable construction is Goldawr, Inc. v. Heiman, 369 U. S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), a decision no less remarkable in this circuit in its own time. In *Goldlawr* the Supreme Court reversed the Second Circuit, 288 F.2d 579 (1961), to hold that transfer under § 1406(a) for improper venue was not precluded where the transferor court was without power to adjudicate the case because of a lack of personal jurisdiction over the defendants. Justice Black concluded that there was nothing in the language or legislative history of § 1406(a) that compelled the restrictive construction of the Court of Appeals. *Id.* at 465–466, 82 S.Ct. 913. On the contrary, he concluded, its language and history showed a congressional purpose to remedy such injustices as a dismissal merely because of "an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Id.* at 466, 82 S.Ct. at 915.

The real defect in this case, of course, is exactly the type of which Justice Black spoke. But as has been indicated, the court is obliged to read the somewhat ambiguous language of § 2241(d) as establishing something more than a mere venue requirement. That, however, does not change the fact that the defect here is one traditionally associated with those that § 1406(a) was meant to cure. In *Goldlawr* the Court did not allow the transferor court's lack of power to adjudicate the case to restrict the availability of the transfer power, and this court is unable to perceive a sound reason for failing to apply the *Goldlawr* rationale to the instant case.[1]

It cannot be overemphasized that it is the variable nature of the jurisdictional statute in this case, § 2241(d), that makes this result possible. The majority of federal cases arise under jurisdictional statutes which prescribe requirements that are invariant over all federal judicial districts. For example, under §§ 1331–1332, neither the substantiality of federal questions, the amount in controversy, nor the citizenship of the parties depend on what district the action is filed in. A § 1406(a) transfer of a case defective under either of those statutes, therefore, would be a pointless gesture, and one obviously in frustration of the general purposes underlying § 1406(a).

There are, of course, other federal statutes in addition to § 2241(d) which link subject matter jurisdiction to variable venue considerations.[2] For example,

---

1. In fact, while not dispositive of the construction given here for § 1406(a), taken as a whole, § 1406, Cure or Waiver of Defects, would seem to contemplate some defects of subject matter jurisdiction. Section 1406(c) allows transfer by the district court of cases there filed wherein the only subject matter jurisdiction lies in the Court of Claims. See the legislative history in 1960 U.S.Code Cong. & Admin.News, p. 3583 (S.Rep.No. 1894, 86th Cong., 2d Sess.). The underlying rationale for this addition to § 1406 is equally applicable to the instant case:

    "The reform of existing practice embodied in this bill is another expression of the underlying philosophy of the Federal Rules of Civil Procedure and of modern legal practice generally, that the decisive question in a lawsuit should, as far as possible, be its merits and not esoteric, technical problems of procedure." *Id.* at U.S.Code Cong. & Admin.News, p. 3585.

2. As is the case here, all such statutes preclude consideration of the problem of whether or not a § 1406(a) transfer can be made where venue is proper but subject matter jurisdiction is lacking. Cf. transfer cases where venue was proper but personal jurisdiction was lacking. See C. Wright, Federal Courts § 44, at 164 n. 17 (2d ed. 1970). See also the dissenting opinion in *Goldlawr, supra.*

33 U.S.C. § 921(d) (Supp. II 1972) provides for application, for the enforcement of compensation orders of the Benefits Review Board under the Longshoremen's and Harbor Workers' Compensation Act, "to the Federal District court for the judicial district in which the injury occurred." Some pre-*Goldlawr* cases have interpreted this statute [3] to preclude a § 1406(a) transfer for improper venue where there was a defect in § 921 subject matter jurisdiction. *Atlantic Ship Rigging Co. v. McLellan,* 288 F.2d 589 (3 Cir. 1961); *Hughes v. Quigley,* 184 F.Supp. 568 (D.N.J.1960). See generally Annot., 3 A.L.R.Fed. 467, 496–98 (1970). Without passing on the applicability of this court's approach with respect to § 2241(d) to cases arising under 33 U.S.C. § 921(d) and similar statutes,[4] it is sufficient to say that the court finds both *Atlantic* and *Hughes* unpersuasive in light of the later developments in *Goldlawr*.

Post-*Goldlawr* cases include *Grubisic v. Esperdy,* 229 F.Supp. 679 (S.D.N.Y. 1964). *Grubisic* dealt with a *sui generis* situation under the Immigration and Nationality Act and is likewise not controlling here. The remaining post-*Goldlawr* cases are the habeas corpus cases discussed earlier, and this court is obliged to disagree with them to the extent of holding that a transfer under § 1406(a) for improper venue is available, if it be in the interest of justice, when a federal district court in a state with two or more federal judicial districts receives an application for a writ of habeas corpus which could not properly have been brought there but could have been brought in another federal district court of that same state.

In this case the *pro se* nature of the petition, the court's own confusion about the location of the correctional facility, the potential for confusion in the disparity between the county boundaries and the facility's mailing address, and the

unnecessary delay that a dismissal would cause all cry out for the discretionary transfer under § 1406(a) held available in this case.

Accordingly, the application is ordered transferred by the Clerk of this Court to the Clerk of the Court of the Southern District of New York under 28 U.S.C. § 1406(a).

So ordered.

---

3. Then a part of 33 U.S.C. § 921(b).

4. Similarly, the court expresses no view on the legitimacy of transfer of a case erroneously founded in the court's derivative jurisdiction. See *Grimes v. Hull-Dobbs, Inc.,* 154 F.Supp. 151 (E.D.Ky.1957).