UNITED STATES of America ex rel. John Wesly WILLIAMS, Jr., Petitioner,

v.

James MORROW, Director, Woodbourne Rehabilitation Center, Pouch 1, Woodbourne, N. Y., Respondent.

No. 68 Civ. 4246.

United States District Court
S. D. New York.

April 18, 1969.

John Wesly Williams, Jr., pro se.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent; Robert S. Hammer, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, currently confined at the Woodbourne Rehabilitation Center for an indeterminate period of up to three years as a narcotics addict, seeks his release or his transfer upon a writ of ha-

beas corpus, attacking both the commitment process and the conditions of his present custody. He is currently held in the charge of the New York State Narcotic Addiction Control Commission.[1] On May 31, 1967, petitioner went to the Commission's Manhattan office to seek help for his problem. Upon the filing of a petition he was directed to the Kings County Supreme Court, where he was ordered to report to the Edgecomb Reception Center for examination.[2] After an examination at Edgecomb, petitioner returned to court, where on June 9 he was certified as an addict and committed to the custody of the Commission.[3]

Petitioner now claims that he voluntarily sought treatment and was told that he would receive a three to six-month inpatient treatment, followed by a prolonged period of supervision; that when he first appeared before the Kings Supreme Court, as instructed, Justice Morrisey informed him for the first time that his confinement would be for an indeterminate period of up to three years and ordered him to report to Edgecomb for medical examination on pain of arrest for non-compliance; that he stood mute at the commitment proceeding under pressure from court officials and agents of the Commission; that he should have been given the assistance of counsel prior to the proceeding; that he was not told of his right to appeal the certification and that once committed he could not unilaterally terminate the arrangement; and that he is in reality incarcerated and subjected to abuse and harassment by prison guards, not receiving medical or psychotherapeutic treatment.

Petitioner has sought relief in the Dutchess County Supreme Court by a writ of habeas corpus. Justice Baratta denied the petition after an evidentiary hearing at which petitioner advanced the deception claim and also urged that statements he made at Edgecomb were elicited in violation of the Miranda rules,[4] that such statements were admitted in the subsequent proceedings in violation of the doctor-client privilege, and that the proffered right to counsel had come too late in the proceedings to be of any practical value. The Court reserved decision and later denied the petition. Although it filed no written opinion, the minutes of the hearing indicate that Justice Baratta based his decision upon a finding that petitioner had voluntarily waived his right to counsel and to a hearing in the proceedings in Kings Supreme Court. According to the answering affidavit of respondent, an appeal from Justice Baratta's denial of the writ is still pending.[5]

In a prior application to this Court for a writ of habeas corpus, petitioner raised a more extended attack upon the manner of his commitment. He claimed that the State had improperly introduced his prior criminal record at the commitment proceeding; that compelling him to recite his medical history prior to his certification violated his Fifth Amendment testimonial privilege; that he was entitled to release because he was no longer an addict; that the state procedure violated the Ex Post Facto, Bill of Attainder and Cruel and Unusual Punishment clauses of the federal constitution; that the state statutory standards for release were so broad and undefined as to leave the state officials with unfettered discretion and the courts with no power of judicial review; and that the procedure established under the statute

1. See N.Y. Mental Hygiene Law, McKinney's Consol.Laws, 27, §§ 200–217.

2. See § 206, subds. 2(d), 2(e) (i).

3. See § 206, subds. 4(a), 4(b).

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. In his affidavit in opposition to the petition, the Assistant Attorney General states that petitioner's "notice of appeal is still on file. Although nothing has been done to perfect the appeal, it remains pending." See People ex rel. Cox v. Johnston, 29 App.Div.2d 570, 286 N.Y.S.2d 1024 (2d Dep't 1967).

violated the rule in In re Gault.[6] Judge Tenney dismissed the application because petitioner's appeal, referred to above, from Justice Baratta's order denying the application for the state writ was still pending. Judge Tenney concluded that the notice of appeal, though prematurely filed after the evidentiary hearing but before the Justice had announced his decision, was still valid under New York law, and therefore ordered petitioner to return to the state courts before prosecuting his claims here.[7]

■ The papers before us demonstrate that with respect to petitioner's charges relating to the initial commitment process, he has neither complied with Judge Tenney's directive nor exhausted his still-available state remedies. This branch of the application based upon the manner of commitment is dismissed.

■ Further, petitioner has never presented to the state courts his claim that the current confinement violates his federal constitutional rights because of the prison-like conditions and the lack of treatment to which he is now subjected. His failure to seek relief from the Commission or, in the event of its failure to act, by an Article 78 proceeding in the state courts to compel the Commission to exercise its broad investigatory powers,[8] or by a new state habeas corpus proceeding requires dismissal of this branch of the application, also without prejudice to renewal upon exhaustion of available state remedies.

6. 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967).

7. New York ex rel. Williams v. New York State Addiction Control Comm'n, 288 F.Supp. 171, 173–174 (S.D.N.Y. 1968).

8. See N.Y.Codes, Rules & Regs., tit. 14, § 1500.1 (eff. Jan. 18, 1968): "When the commission has received information, from any source, that any person certified or committed to its custody pursuant to article 9 of the Mental Hygiene Law, is wrongfully deprived of his liberty, or is cruelly, negligently or im-

properly treated, or inadequate provision is made for his proper supervision and safe keeping, it may ascertain the facts thereof, or may order an investigation of the facts. The representative of the commission conducting any investigation may issue compulsory process for the attendance of witnesses and the production of papers. If the commission deems it proper, it may issue an order directed to the person, institution or agency involved, directing and providing for such remedy as shall be specified."